UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **TYRON TRAMON BATES** | **CIVIL ACTION NO. 25-0764** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN NOLAN BASS, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Tyron Tramon Bates, a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately June 2, 2025, under 42 U.S.C. § 1983. He names the following Defendants: Warden Nolan Bass, Sheriff Robert L. Rushing, and Captain Smith.[1] For reasons that follow, the Court should dismiss Plaintiff's claim that Defendants failed to protect him from a stabbing in 2023. The Court should retain the remaining claims.

## Background

Plaintiff alleges that the water to TPDC was not working in March 2023, and March 2024. [doc. # 1, p. 3]. "Each time the water was not working, it would take a period of days to get back working." *Id.* As a result, sinks and toilets were inoperable, and inmates were forced to defecate in plastic bags and urinate in a shower. *Id.* Plaintiff had to place his bag of feces in a larger bag, which was located in a shower. *Id.* Plaintiff states that the practice "was very unsanitary." *Id.* He also claims that when the water was not working, he was only provided four

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

16-ounce bottles of water each day for showering, drinking, and washing his hands.  [doc. #s 1, p. 3; 5, p. 3].

Plaintiff claims, "water is constantly on the ground in the bathroom from a leak in the wall or something and has not been repaired in years."  [doc. # 1, pp. 3-4].  The water on the ground allegedly makes it "easy to slip and fall."  *Id.*

Plaintiff next alleges that two of the seven toilets at TPDC have not worked "for a long time[.]"  [doc. # 1, p. 4].  He alleges further that water is constantly on the floor around two of the operable toilets, which makes it "very easy to get your clothes wet while using one of these. [sic]."  *Id.*

Plaintiff next claims that "there has been black mold in the bathroom shower for a long time."  [doc. # 1, p. 4].  "The workers have fixed some of the problem but mold is still all over the bathroom and in some places in the dorm."  *Id.*  In an amended pleading, he alleges that "[t]hey have made attempts to clean the black mold but failed to remove it all thus having it grow back the way it was before."  [doc. # 5, p. 1].  He alleges that Bass refused to hire professionals to remove the mold and instead "used inmates who are inexperienced so he could save money."  *Id.* at 4.  "Because of this, the black mold and rust were not fully removed."  *Id.*

Plaintiff alleges that there is rust at the facility and that "nothing has been done about the rust which is a hazard in and of itself."  [doc. # 5, p. 1].  He states that the mold and rust have caused him headaches, difficulty breathing, stomach aches, and eye burning.  *Id.* at 3.

Plaintiff claims in his amended pleading that "[b]ecause the facility failed to keep knives and weapons out of the dorms, [he] was stabbed in October 2023" and had to be "rushed to the hospital with serious injuries."  [doc. # 5, p. 3].

2

Plaintiff alleges that there is "violence with knives" every day and in every dormitory. [doc. # 1, p. 6]. Twenty-four inmates have been "stabbed at this facility in the past 25 days as of June 20, 2025." [doc. # 5, p. 3]. He claims that Warden Bass "has not installed safety protocols such as daily searches or shake downs." *Id.* at 5. "If he would do so," Plaintiff alleges, "it would cut down substantially on the drugs and weapons." *Id.*

Plaintiff recounts that on June 18, 2025,[2] one inmate stabbed another in the face. [doc. # 5, p. 1]. Two weeks before that, two other inmates "were fighting with weapons as long as a lawn mower blade." *Id.* Plaintiff claims that after these incidents, Warden Bass did not perform a "shake down to find any weapons." *Id.* at 1-2. Plaintiff then alleges that 2-3 weeks before the latter incident listed above, one inmate stabbed another in the back with a knife. *Id.* at 2. He states that the attacking inmate "did not get another charge and was back in the dorm 2-3 weeks later as if nothing happened." *Id.* "A search was done immediately after that incident, but they did not do a thorough job," according to Plaintiff. *Id.* He adds: "There is a 14 inch or longer piece of metal pipe that inmates are passing around for people to use in the dorm as I write this. Knives get sharpened on the floor daily. Obviously Nolan Bass is not doing his job and allowing weapons and knives to remain in the jail." *Id.* He likewise claims that Sheriff Rushing "has not taken any initiative in doing any kind of serious search himself to find weapons." *Id.*

Plaintiff alleges that "there are drugs all over the compound because the guards bring them in." [doc. # 1, p. 6]. He adds that there is drug use every day and in every dormitory. *Id.* He claims that Captain Smith is "fully aware of the drug situation here" and that he has "personally seen [Smith] make fun of inmates that are high and getting them to dance. [sic]." [doc. # 5, p. 1]. Plaintiff alleges that Smith failed to discipline inmates who are high and passed

---

[2] To recall, Plaintiff filed this proceeding on approximately June 2, 2025.

3

out on the floor. *Id.* Smith allegedly "tolerates drugs way too much." *Id.* "Because drugs are all over the place, [Plaintiff] is constantly breathing the smoke and chemicals in . . . ." *Id.* at 3. He suggests that his one hour each month of time outside does not provide him enough fresh air to ameliorate the effects of the smoke. *Id.*

For relief, Plaintiff seeks $550,000.00 and a transfer to a work release facility. [doc. # 1, p. 7].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

4

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to

make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Statute of Limitations**

Plaintiff claims that "[b]ecause the facility failed to keep knives and weapons out of the dorms, [he] was stabbed in October 2023" and had to be rushed to the hospital with serious injuries. [doc. # 5, p. 3].

The statute of limitations for Section 1983 actions is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1984). Thus, Louisiana's one-year personal injury statute of limitations, under L<small>A</small>.

CIV. CODE art 3492, applies here.[4]  *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

However, the date of accrual for a Section 1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986).  "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516 (quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)).  In other words, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brockman v. Texas Dep't of Crim. Just.*, 397 F. App'x 18, 22 (5th Cir. 2010).

Here, Plaintiff's claims accrued in October 2023, when Defendants allegedly failed to protect him from harm.  Plaintiff plainly had knowledge of his claim when he was stabbed and when Defendants failed to protect him from that harm.[5]  He therefore had one year, or until October 2024, to file his claim.  As he did not file his claim until, at the earliest, June 2025, the statute of limitations bars the claim.

---

[4] "The Louisiana Legislature has recently repealed its one-year prescription on delictual actions, or torts, and substituted it with a two-year prescription." *Sibley v. Touro LCMC Health*, 2024 WL 5118489, at n.5 (5th Cir. Dec. 16, 2024) (citing LA. CIV. CODE art. 3493.1 (2024)). "But that amendment only applies prospectively to actions arising after July 1, 2024." *Id.*  Because Plaintiff alleges that the Defendants' actions arose before July 1, 2024, the one-year period applies. *See Stanley v. Morgan*, 120 F.4th 467, 470 (5th Cir. 2024), cert. denied, 2025 WL 663720 (U.S. Mar. 3, 2025).

[5] *See White v. Zerangue*, 57 F. App'x 210 (5th Cir. 2002) (affirming a finding that a failure-to-protect claim against law enforcement officers accrued the day the inmate was attacked by fellow inmates).

The limitations period is subject to state tolling and equitable tolling in certain circumstances. "[E]quitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). The plaintiff bears the burden of establishing that equitable tolling applies. *Rotella v. Pederson*, 144 F.3d 892 (5th Cir. 1998); *see also Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) ("We have found that equitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'") (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)). Tolling can apply where "extraordinary circumstance[s] prevent[]" a plaintiff from filing suit. *Richards v. Gonzales*, 2022 WL 3226621, at *1 (5th Cir. Aug. 10, 2022).

Here, Plaintiff does not argue that his claims were tolled. He does not allege, for instance, that any person's affirmative conduct reasonably induced him to forego filing suit within the limitations period.[6] Accordingly, the Court should dismiss this untimely claim.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Tyron Tramon Bates's claims that Defendants failed to protect him from a stabbing in 2023 be **DISMISSED WITH PREJUDICE** as time barred, legally frivolous, and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation

---

[6] If Plaintiff contends that his claims were tolled for any reason, he may present his contention in an objection to this Report and Recommendation.

to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 26th day of August, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge